[No. G038449. Fourth Dist., Div. Three. Mar. 5, 2008.]

HASSAN KASSIR et al., Plaintiffs and Respondents, v.
MOE A. ZAHABI, JR., Defendant and Appellant.

**COUNSEL**

Stuart W. Knight for Defendant and Appellant.

Aires Law Firm and Timothy Carl Aires for Plaintiffs and Respondents.

**OPINION**

**SILLS, P. J.**—The trial court ordered Moe A. Zahabi, Jr., to specifically perform his contract to sell real property to Hassan Mannaa, but the property was foreclosed upon before the order was carried out. In these further proceedings, the trial court issued a judgment ordering Zahabi to pay $89,371 to Mannaa for rents accruing during the time Zahabi was able to perform the agreement but refused to do so. Zahabi claims the trial court erred in failing to offset the rents with an amount compensating him for the loss of use of the purchase price he would have received under the agreement. We find because

the property was overencumbered, Zahabi would have received nothing under the agreement and no offset was required. Accordingly, we affirm the judgment.

## FACTS

In March 2002, Moe Zahabi owned residential property located on Cypress Lane in Irvine. Hassan Kassir was the lessee of the property and wanted to buy it. Accordingly, on March 30, 2002, Zahabi and Kassir entered into an agreement whereby Zahabi granted Kassir an option to purchase the property for $480,000 and Kassir paid a six month rent advance of $18,900, any unused portion of which was to be refunded to Kassir through escrow. The agreement provided that Kassir could assign his option rights with Zahabi's consent. Kassir assigned the option rights to Hassan Mannaa.

In September 2003, Kassir and Mannaa filed a first amended complaint against Zahabi, alleging the option was formally exercised on July 25, 2002, but Zahabi refused to transfer title to the property. The complaint prayed for, inter alia, specific performance of the option agreement. (*Mannaa v. Zahabi* (Super. Ct. Orange County, 2004, No. 03CC05628).) On the same day, Kassir filed a first amended complaint in another action, alleging that Zahabi breached the lease by failing to maintain and repair the property. Kassir interpleaded approximately $3,000 with the court, which he contends he is entitled to deduct from rent because he was forced to spend that amount on repairs. (*Kassir v. Zahabi* (Super. Ct. Orange County, 2007, No. 03CC05219).) The two cases were consolidated.

In May 2004, the trial court severed the first cause of action for specific performance in case No. 03CC05628 from the rest of the case and tried it separately. On July 2, 2004, the court entered judgment for specific performance, ordering Zahabi to convey the subject property "free and clear of all claims, liens and encumbrances" to Mannaa for $480,000. "[T]his court will retain jurisdiction to enforce its judgment, to resolve any conflicts that arise concerning the details of the transaction, to provide any further relief required by the circumstances, including, without limitation, the failure or refusal by Defendant Moe A. Zahabi, Jr. to comply with the Court's judgment, and for further proceedings resulting therefrom, including, but not limited to, proceedings to compel payment of the undertaking and any other sums on deposit with this Court pursuant to Code of Civil Procedure §§ 187, 386 et seq., 572 et seq. and 995.010 et seq."

An escrow was opened to effect the court-ordered transfer of the property, but Zahabi refused to cooperate. The property had legitimate liens against it for more than the purchase price; in addition, Zahabi allegedly filed three fraudulent liens "to 'lien up' the property so as to dissuade [Mannaa] from pursuing his right to title and possession of the property." Subsequently, Mannaa and Kassir amended their complaint in case No. 03CC05628 to add the lienholders as defendants. Then Zahabi filed bankruptcy and invoked the automatic stay. Mannaa and Kassir obtained relief from the automatic stay, and the trial court invalidated the fraudulent liens in March 2005. In the meantime, however, the senior lienholder foreclosed on the property on February 10, 2005. The parties agreed there was no equity in the property after satisfaction of the liens.

Two years later, in February 2007, the parties appeared for trial of the remaining issues, which, by stipulation, were limited to further relief under the first cause of action for specific performance. After trial, the court issued a tentative decision finding that Zahabi could reasonably have transferred title to Mannaa by September 3, 2002 "had [Zahabi] not refused to fulfill his obligation under the option. Thus, [Mannaa] was the equitable owner of the property from that point forward until the time of foreclosure." During the time Mannaa was the equitable owner, Kassir continued to live in the property and pay rent. "By earlier order of the court some of the rents were paid in to the 'Wells account[,]' later transferred in trust to Mr. Aires (counsel for plaintiff Mannaa), and some were paid to the clerk of court via interpleader." The court found reasonable rent during the period from September 3, 2002, to February 10, 2005, was $103,547. "Since this amount exceeds the combined balance in the 'Wells account' (now held in trust by attorney Aires) and the 'interpleader account,' the court finds that those sums belong to [Mannaa] . . . . [¶] Under *Rogers* [*v. Davis* (1994) 28 Cal.App.4th 1215 [34 Cal.Rptr.2d 716]] the defendant would be entitled to an offset for interest on the amount of principal he would have received had he been paid the option price in September of 2002. However, since the property was encumbered in excess of the purchase price of $480,000, there was no surplus and, thus no offset. Even if defendant were entitled to reasonable interest on the full $480,000 during this time, the difference after applying the offset would still exceed the amount in the two accounts and would amount to $89,371. Since [Mannaa] prayed for the lower of these two amounts, that will be the amount of the award."

The judgment entered February 27, 2007, gave judgment to Mannaa against Zahabi in the sum of $89,371, plus costs. It directed the clerk of the court to "disburse any funds held pursuant to interpleader in this action, and any interest thereon, the 'Aires Law Firm Trust Account for Hassan Mannaa.' " It directed the Aires Law Firm to "disburse any sums held in trust representing 'rents' received from the Property to . . . Mannaa subject to the

firm's claim for attorney's fees and expenses of litigation." The judgment further provided that Zahabi "shall be entitled to a credit against the money judgment for any amounts disbursed by the Court Clerk or Aires Law Firm as ordered hereinabove . . . ."

## DISCUSSION

Zahabi appeals from the judgment awarding rents to Mannaa. He first argues the trial court lacked jurisdiction to award rents because the previous judgment for specific performance barred additional recovery; in other words, the claim for rents is merged into the judgment for specific performance. We disagree.

■ The "judgment" for specific enforcement was actually an interlocutory order. " 'It is not the form of the decree but the substance and effect of the adjudication which is determinative.' " (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698 [107 Cal.Rptr.2d 149, 23 P.3d 43].) " '[W]here no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' " (*Ibid.*)

■ It is well established that the court has the power to award compensation incidental to a decree for specific performance, such as rents, when necessary "to relate the performance back to the date set in the contract." (*Ellis v. Mihelis* (1963) 60 Cal.2d 206, 220 [32 Cal.Rptr. 415, 384 P.2d 7].) The court specifically retained jurisdiction to "provide any further relief required by the circumstances, including . . . the failure or refusal by . . . Zahabi to comply with this Court's judgment." This further relief included amending the complaint and adding defendants to the action. The amount of relief was not determined until the judgment of February 2007.[1]

Zahabi next contends the trial court erred in failing to order an offset against the rents for the interest he would have earned on the purchase price had it been timely paid. He argues the trial court erroneously denied him an interest offset because there was no surplus equity after satisfaction of the liens. He contends he is entitled to interest on the full purchase price, not the amount of equity in the property.

---

[1] Alternatively, the court could have had jurisdiction under its power to enforce its judgment of specific performance. But the specific performance "judgment" leaves open the possibility of additional relief, which suggests it is interlocutory.

█ In *Stratton v. Tejani* (1982) 139 Cal.App.3d 204 [187 Cal.Rptr. 231], the court explained that both the seller and the buyer are entitled to receive the full performance of the contract where specific performance has been granted. "[B]ecause execution of that judgment will occur at a date substantially after the date of performance provided by the contract, financial adjustments must be made to relate their performance back to the contract date. [Citation.] First, when a buyer is deprived of possession of the property pending resolution of the dispute and the seller receives rents and profits, the buyer is entitled to a credit against the purchase price for the rents and profits from the time the property should have been conveyed to him. [Citations.] . . . Second, a seller also must be treated as if he had performed in a timely fashion and is entitled to receive the value of his lost use of the purchase money during the period performance was delayed. [Citations.]" (*Id.* at p. 212, fn. omitted.)

█ The *Stratton* court explained the limitations on these general rules: "First, the buyer may not receive both the profits and reasonable rental value of the property and the value derived from his use of purchase funds which were not irrevocably allocated toward the purchase price. The buyer must reduce his credit for rents and profits by a sum equivalent to the value of his use of the retained purchase funds. [Citation.] Second, if any part of the purchase price has been set aside by the buyer with notice to the seller, the seller may not receive credit for his lost use of those funds. [Citation.] Third, any award to the seller representing the value of his lost use of the purchase money cannot exceed the rents and profits awarded to the buyer, for otherwise the breaching seller would profit from his wrong. [Citations.]" (*Stratton v. Tejani, supra,* 139 Cal.App.3d at p. 213.)

Applying the foregoing principles, the court stated the buyers "should receive a credit against the purchase price for the reasonable rental value of the residence [during the time performance was delayed], less the reasonable value of their use of the $36,000 they did not deposit into escrow." The sellers were entitled to "the reasonable value of their use of the *entire* purchase price less $9,000, the total of the option price and cash deposited into escrow, but not in an amount exceeding the total rent for the period performance was delayed." (*Stratton v. Tejani, supra,* 139 Cal.App.3d at p. 213, italics added.) But the opinion does not reveal whether there were any liens against the property.

In *Rogers v. Davis, supra,* 28 Cal.App.4th 1215, the buyers of real property sued the sellers for specific performance of the purchase contract, but the

property was foreclosed upon and sold at a trustee's sale before trial. After payment of liens, the proceeds of the sale were $29,000. The court found the plaintiffs were equitable owners of the property at the time of the foreclosure sale, and were thus entitled to the sale proceeds; the sellers were entitled to the balance owed on the purchase contract. There was no mention of an award to the sellers of interest for the loss of use of the balance of the purchase price.

■ We have found no case directly addressing Zahabi's contention, i.e., that interest recoverable by the seller should be computed on the entire purchase price or only the equity. But the cases make it clear that the purpose of awarding additional compensation to the parties to a specific performance action is to restore them as nearly as possible to the position they would have been in had the contract been performed as planned. Had the escrow closed on September 3, 2002, Zahabi would have received nothing because the escrow holder would have used the entire $480,000 paid into escrow by Mannaa to pay off existing liens. Thus, the delayed performance has not deprived Zahabi of the use of any money, so no offset for interest should be ordered.

In any event, the trial court did grant Zahabi an offset computed on the entire purchase price using the United States Treasury bill four-week rate during the relevant time period. This offset amounted to $14,176, which, when subtracted from the amount of back rent due ($103,547) left a balance due Mannaa in excess of the $89,371 available in the two funds held by third parties.

■ Zahabi argues the court should have used the legal rate of 10 percent or should have allowed him to present more evidence to support a rate higher than the Treasury bill. But "the trial court is not required to equate the reasonable value of the use of money with interest at the legal rate." (*Stratton v. Tejani, supra,* 139 Cal.App.3d at p. 213.) Mannaa put on an expert who testified the Treasury bill rate would be the appropriate one to use in calculating the return if Zahabi had invested the entire $480,000 when escrow was supposed to close. Zahabi tried to get Mannaa's expert to testify to higher available rates, but Mannaa successfully objected to the questions. The trial court indicated it would take judicial notice of other available rates. Zahabi did not call his own expert and cannot now complain he was precluded from presenting evidence.

## DISPOSITION

The judgment is affirmed. Respondents are entitled to the costs of appeal.

Rylaarsdam, J., and Fybel, J., concurred.